## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

----------------------------------------------------------------x

In re:                                                    :     Chapter 11
                                                          :
MOLYCORP, INC., *et al.*,[1]                              :     Case No. 15-11357 (CSS)
                                                          :
                            Debtors.                      :     (Jointly Administered)

----------------------------------------------------------------x

OFFICIAL COMMITTEE OF UNSECURED                           :
CREDITORS OF MOLYCORP, INC., *et al.*,                    :
for and on behalf of the bankruptcy estates of            :
the Debtors,                                              :
                                                          :
                            Plaintiff,                    :     Adv. Pro. No. 16-50005 (CSS)
v.                                                        :
                                                          :
OAKTREE CAPITAL MANAGEMENT, L.P.,                         :
OCM MLYCO CTB LTD., OCM MLYCO PT,                         :
LLC, GEOFFREY R. BEDFORD, MICHAEL                         :
F. DOOLAN, JAMES S. ALLEN,                                :
CONSTANTINE KARAYANNOPOULOS,                              :
RUSSELL D. BALL, BRIAN T. DOLAN,                          :
JOHN GRAELL MOORE, CHARLES R.                             :
HENRY, JAMES J. JACKSON, MARK S.                          :
KRISTOFF, ALEC MACHIELS, DR.                              :
MICHAEL SCHWARZKOPF, JOHAN                                :
DEJANS, LIZA HARRIDYAL-SODHA,                             :
KEVIN W. JOHNSON, MARJOLEINE VAN                          :
OORT, SHANNON Y. SONG, and WELLS                          :
FARGO BANK, NATIONAL ASSOCIATION,                         :
                                                          :
                            Defendants.                   :

----------------------------------------------------------------x

## OAKTREE'S MOTION FOR JUDGMENT ON THE PLEADINGS
## AS TO EQUITABLE DISALLOWANCE CLAIM ASSERTED IN COUNT XIII
## OF THE COMPLAINT

---

[1]      The Debtors are:  Molycorp, Inc. (1797); Industrial Minerals, LLC; Magnequench, Inc. (1833); Magnequench International, Inc. (7801); Magnequench Limited; Molycorp Advanced Water Technologies, LLC (1628); MCP Callco ULC; MCP Canada Holdings ULC; MCP Canada Limited Partnership; MCP Exchangeco Inc.; Molycorp Chemicals & Oxides, Inc. (8647); Molycorp Luxembourg Holdings S.à.r.l.; Molycorp Metals & Alloys, Inc. (9242); Molycorp Minerals Canada ULC; Molycorp Minerals, LLC (4170) ("Minerals"); Molycorp Rare Metals Holdings, Inc. (4615); Molycorp Rare Metals (Utah), Inc. (7445); Neo International Corp.; PP IV Mountain Pass, Inc. (1205); PP IV Mountain Pass II, Inc. (5361); and RCF IV Speedwagon Inc. (0845).  The Debtors' United States headquarters are located at 5619 DTC Parkway, Suite 1100, Greenwood Village, Colorado, 80111.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

TABLE OF AUTHORITIES .................................................................................................. iii

(continued) ......................................................................................................................... iii

TABLE OF AUTHORITIES .................................................................................................. iv

(continued) ......................................................................................................................... iv

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .....................................................................................................................2

        A.     The 2014 Transaction.............................................................................................2

        B.     The Complaint .......................................................................................................3

LEGAL STANDARD ..............................................................................................................3

ARGUMENT ...........................................................................................................................4

I.      THE PLAIN LANGUAGE OF THE BANKRUPTCY CODE PRECLUDES EQUITABLE DISALLOWANCE OF CLAIMS ..............................................................4

        A.     Equitable Disallowance Is Not Warranted Under Section 502(b)(1) of the Bankruptcy Code ...................................................................................................5

        B.     Section 105 of the Bankruptcy Code Cannot Independently Confer Authority to Equitably Disallow Claims ...............................................................7

II.     NEITHER PRECEDENT NOR LEGISLATIVE HISTORY CAN OVERRIDE THE BANKRUPTCY CODE'S PLAIN LANGUAGE ....................................................9

        A.     *Pepper v. Litton* Is Inapposite............................................................................11

        B.     The Bankruptcy Code's Legislative History Does Not Help the Committee .......13

CONCLUSION......................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*,
 169 B.R. 832 (Bankr. S.D.N.Y. 1994) .....................................................................9

*Austin v. Chisick (In re First All. Mortg. Co.)*,
 298 B.R. 652 (C.D. Cal. 2003), *aff'd*, 471 F.3d 977 (9th Cir. 2006) ......................9

*Adelphia Recovery Trust v. Bank of Am.*,
 390 B.R. 64 (S.D.N.Y. 2008).................................................................... 9, 10, 15

*Allah v. Hayman*,
 442 Fed. App'x 632 (3d Cir. 2011).........................................................................4

*Balistreri v. Pacifica Police Dep't*,
 901 F.2d 696 (9th Cir. 1990) ..................................................................................4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................4

*Benjamin v. Diamond (In re Mobile Steel Co.)*,
 563 F.2d 692 (5th Cir. 1977) ..................................................................................9

*Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration, LLC)*,
 472 B.R. 582 (Bankr. M.D. Fla. 2012).....................................................................2

*C.P. Sys., Inc. v. Recovery Corp of Am.*,
 No. 97 Civ. 7025, 1998 U.S. Dist. LEXIS 12797 (S.D.N.Y. Aug. 18, 1998) ..........2

*Caprio v. Healthcare Rev. Recovery Grp., LLC*,
 709 F.3d 142 (3d Cir. 2013) ...................................................................................3

*Charleswell v. Chase Manhattan Bank, N.A.*,
 308 F. Supp. 2d 545 (D.V.I. 2004).........................................................................2

*Citrus Tower Blvd. Imaging Ctr., LLC v. Key Equip. Fin., Inc. (In re Citrus Tower Blvd. Imaging Ctr., LLC)*,
 520 B.R. 892 (Bankr. N.D. Ga. 2014)..................................................................6, 7

*Graziano v. Pataki*,
 689 F.3d 110 (2d Cir. 2012) ...................................................................................4

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Harbinger Capital Partners LLC v. Ergen (In re LightSquared Inc.)*,
   504 B.R. 321 (Bankr. S.D.N.Y. 2013) ...................................................................*passim*

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
   530 U.S. 1 (2000) ....................................................................................................10

*Holtzman v. Schlesinger*,
   484 F.2d 1307 (2d Cir. 1973)...................................................................................15

*Law v. Siegel*,
   134 S. Ct. 1188 (2014) ...................................................................................7, 8, 9, 10

*McCurdy v. Wedgewood Capital Mgmt. Co.*,
   No. CIV. A. 97-4304, 1999 WL 391494 (E.D. Pa. May 28, 1999) ...........................4

*Mukaida v. Hawaii*,
   159 F. Supp. 2d 1211 (D. Haw. 2001) .......................................................................2

*Norwest Bank Worthington v. Ahlers*,
   485 U.S. 197 (1988) ...................................................................................................7

*In re Outdoor Sports Headquarters, Inc.*,
   168 B.R. 177 (Bankr. S.D. Ohio 1994) ...............................................................10, 13

*Pan Am Corp. v. Delta Air Lines, Inc.*,
   175 B.R. 438 (S.D.N.Y. 1994)..............................................................................9, 10

*Pepper v. Litton*,
   308 U.S. 295 (1939) ...............................................................................................*passim*

*Peteete v. Asbury Park Police Dep't*,
   No. 09-1220 (MLC), 2010 U.S. Dist. LEXIS 131360 (D.N.J. Dec. 13, 2010) .........2

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...............................................................6, 8, 9

*In re Smart World Techs.*,
   423 F.3d 166 (2d Cir. 2005) .......................................................................................7

*In re TMST, Inc.*,
   518 B.R. 329, *vacated in part on other grounds*, Nos. 09-17787-DK, ADV 11-
   340, 2014 WL 6390312 (Bankr. D. Md. Nov. 14, 2014) ...................................6, 8, 9

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
   549 U.S. 443 (2007) ...........................................................................................4, 5, 8

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Turbe v. Gov't of V. I.*,
   938 F.2d 427 (3d Cir. 1991) ................................................................. 3

*U.S. v. Ron Pair Enters., Inc.*,
   489 U.S. 235 (1989) ........................................................................ 10

*Vanston Bondholders Protective Comm. v. Green*,
   329 U.S. 156 (1946) ......................................................................... 4

*In re Virtual Network Servs. Corp.*,
   902 F.2d 1246 (7th Cir. 1990) .................................................... 14, 15

*W. Air Lines, Inc. v. Bd. Of Equalization of State of S.D.*,
   480 U.S. 123 (1987) ........................................................................ 15

*In re Washington Mutual, Inc.*,
   461 B.R. 200 (Bankr. D. Del. 2011), *vacated in relevant part,* No. 08-12229,
   (MFW) 2012 Bankr. LEXIS 895 (Bankr. D. Del. Feb. 23, 2012) ................. 9, 10

**Statutes and Rules**

11 U.S.C. § 105 ........................................................................... 4, 7, 8

11 U.S.C. § 502 ............................................................................ *passim*

11 U.S.C. § 510 ................................................................. 9, 13, 14, 15

11 U.S.C. § 522 ................................................................................ 7, 8

Act of June 22, 1938, (Chandler Act), ch. 575, 52 Stat. 840 ...................... 13

Fed. R. Civ. P. 12 ........................................................................... 1, 3, 4

Fed. R. Bankr. P. 7012 ......................................................................... 1

**Other Authorities**

H.R. 8200, 95th Cong., 1st Sess. (1977) ................................................. 13

H.R. Rep. No. 595 (1977) .................................................................... 14

2 Moore's Federal Practice – Civil § 12.38 ............................................... 4

S. 2266, 95th Cong., 2d Sess. (1977) .................................................... 14

Oaktree Capital Management, L.P., OCM MLYCO CTB Ltd., and OCM MLYCO PT, LLC (collectively, "Oaktree"), through their undersigned counsel, hereby move this Court, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure), for judgment on the pleadings in favor of Oaktree and against the Official Committee of Unsecured Creditors (the "Committee") of the debtors in the above-captioned jointly administered chapter 11 cases (the "Debtors") with respect to Count XIII of the Committee's *Adversary Complaint* [D.I. 1] (the "Complaint") insofar as that count seeks equitable disallowance of any of Oaktree's claims against the Debtors (the "Oaktree Claims").

## PRELIMINARY STATEMENT

While, as Oaktree will demonstrate at trial, each of the 14 causes of action the Committee asserts against Oaktree is baseless, the Committee's request for equitable disallowance of the Oaktree Claims stands out as particularly flawed because equitable disallowance is not even a legally cognizable cause of action.[2]  As one court recognized little more than two years ago in a thoroughly reasoned decision rejecting the plaintiffs' cause of action for equitable disallowance of claims in *Harbinger Capital Partners LLC v. Ergen (In re LightSquared Inc.)*, 504 B.R. 321 (Bankr. S.D.N.Y. 2013), "***no court has ever employed equitable disallowance as a remedy or sanction under the Bankruptcy Code***."  *Id.* at 338 (emphasis added).

This Court need not await trial to dispose of the Committee's request for equitable disallowance of the Oaktree Claims.  Consideration of that request properly begins and ends with the plain language of section 502 of the Bankruptcy Code, which commands that the Court

---

[2]    Even had such a cause of action existed under the Bankruptcy Code (and it does not), as set forth in footnote 6 below, the facts in these cases would never warrant such a draconian remedy.

"shall" allow a duly filed claim except where one of nine statutorily enumerated exceptions applies. "Equitable disallowance" is not one of these enumerated exceptions. That alone is fatal to the Committee's request. The Court therefore should grant Oaktree judgment on the pleadings with respect to those portions of Count XIII of the Complaint that pertain to equitable disallowance of the Oaktree Claims.[3]

## BACKGROUND

A.    **The 2014 Transaction**

In May 2014, the Debtors publicly announced that they would seek financing, which was to be used for general corporate purposes, including to service existing debt and to "fully ramp-up and optimize" production at their Mountain Pass mining facility ("Mountain Pass"). Following this announcement, a competitive, arms-length process ensued, in the course of which a number of potential lenders, including Oaktree, submitted bids to the Debtors. After several weeks of negotiations in which the Debtors played the bidders off of one another in order to secure more favorable terms, on July 18, 2014, the Debtors selected Oaktree's offer as the most attractive.

The parties consummated their transaction (the "2014 Transaction") on September 11, 2014. In connection with the 2014 Transaction, Oaktree committed to provide the Debtors up to $400 million.

---

[3]    Although the Committee's claim for equitable subordination in Count XIII also lacks merit, this Motion addresses only the claim for equitable disallowance. The Court may enter partial judgment with respect to a theory of relief even if that theory is combined with other theories in a single count. *See, e.g., Peteete v. Asbury Park Police Dep't*, No. 09-1220 (MLC), 2010 U.S. Dist. LEXIS 131360, at *30-31 (D.N.J. Dec. 13, 2010); *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 577 (D.V.I. 2004); *Mukaida v. Hawaii*, 159 F. Supp. 2d 1211, 1216 (D. Haw. 2001); *C.P. Sys., Inc. v. Recovery Corp of Am.*, No. 97 Civ. 7025, 1998 U.S. Dist. LEXIS 12797, at *8 (S.D.N.Y. Aug. 18, 1998); *Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration, LLC)*, 472 B.R. 582, 663 (Bankr. M.D. Fla. 2012).

The months following the closing of the 2014 Transaction saw a downturn in rare earth commodity prices that no one, including the Debtors and Oaktree, foresaw. Unexpected operating challenges at Mountain Pass also occurred, preventing the critical ramp-up of that facility. Owing to these events, and notwithstanding Oaktree's cash infusion, on June 25, 2015, the Debtors filed for protection under chapter 11 of the Bankruptcy Code.

**B.    The Complaint**

Throughout these chapter 11 cases, the Committee has sought to wrest a recovery for its constituents to which they are not entitled by, among other things, attacking the Oaktree Claims from every possible angle. The Committee's efforts have included overwhelmingly broad discovery and culminated in the 120-page, 16-count Complaint.

One of the counts in the Complaint—Count XIII—seeks, among other things, equitable disallowance of the Oaktree Claims. Specifically, the Complaint alleges that "[p]rinciples of equitable subordination or, alternatively, ***equitable disallowance*** require that any and all claims of Oaktree . . . be equitably subordinated . . . or ***disallowed***." Complaint ¶ 425 (emphasis added). In support of this allegation, the Committee vaguely alleges that "courts have held that equitable disallowance of claims may be appropriate in certain circumstances." *Id.* ¶ 416. As discussed below, that assertion drastically misrepresents applicable law.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." "[A] motion for judgment on the pleadings based on the theory that the plaintiff failed to state a claim is reviewed under the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Caprio v. Healthcare Rev. Recovery Grp., LLC,*

709 F.3d 142, 146-47 (3d Cir. 2013); *see also Turbe v. Gov't of V. I.*, 938 F.2d 427, 428 (3d Cir.

1991); *accord* 2 Moore's Federal Practice – Civil. § 12.38 (3d. ed.) ("[A]ny distinction between

[motions to dismiss and motions for judgment on the pleadings] is merely semantic because the

same standard applies to motions made under either subsection.").  Thus, judgment must be

entered in favor of a defendant where the plaintiff fails to "state a claim to relief that is plausible

on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Allah v. Hayman*, 442

Fed. App'x 632 (3d Cir. 2011) (affirming dismissal of claim under Rule 12(c)); *Graziano v.

Pataki*, 689 F.3d 110 (2d Cir. 2012) (same).  A claim that lacks support in the law is not

plausible and therefore fails under this standard.  *See McCurdy v. Wedgewood Capital Mgmt.

Co.,* No. CIV. A. 97-4304, 1999 WL 391494 at *3 n.6 (E.D. Pa. May 28, 1999) ("Dismissal can

be based on the ***lack of a cognizable legal theory*** or the absence of sufficient facts alleged under

a cognizable legal theory.") (emphasis added) (citing *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990)).

## ARGUMENT

### I.    THE PLAIN LANGUAGE OF THE BANKRUPTCY CODE PRECLUDES EQUITABLE DISALLOWANCE OF CLAIMS

The Supreme Court has long recognized that "what claims of creditors are valid

and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a

question which, in the absence of overruling federal law, is to be determined by reference to state

law."  *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946).  Thus, courts

"generally presume that claims enforceable under applicable state law will be allowed in

bankruptcy unless they are expressly disallowed" by the Bankruptcy Code.  *Travelers Cas. &

Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-52 (2007).

Here, the Oaktree Claims are valid and enforceable under state law.  The Complaint asks the Court to override state law and "equitably" disallow the Oaktree Claims by reference to two sections of the Bankruptcy Code:  sections 502(b)(1) and 105(a).  Complaint ¶¶ 414-15.   By their plain terms, however, neither of these sections provides for equitable disallowance of valid state law claims.  Neither does any other section of the Bankruptcy Code.  Indeed, the words "equitable disallowance" do not appear in the Bankruptcy Code at all.  The Bankruptcy Code simply does not authorize courts to "equitably" disallow claims.  Accordingly, the presumption in favor of allowing valid state law claims controls.  Judgment must be entered against the Committee as to Count XIII of the Complaint insofar as it seeks equitable disallowance of the Oaktree Claims.

A.      **Equitable Disallowance Is Not Warranted Under Section 502(b)(1) of the Bankruptcy Code**

The first section of the Bankruptcy Code that the Committee mistakenly relies on is section 502(b)(1).  Section 502, entitled "Allowance of claims or interests," governs the allowance and disallowance of claims.  Section 502(a) provides that a properly filed claim "is deemed allowed" unless a party in interest objects.  Section 502(b), in turn, states that even when a party in interest objects, "the court . . . shall allow such claim," except to the extent that one of nine enumerated exceptions applies, in which case the claim must be disallowed.  11 U.S.C. § 502(b)(1)-(9).

By the plain terms of section 502, the Court can only disallow a claim when one of the statutorily enumerated exceptions in section 502(b) applies.  Conversely, where no enumerated exception applies, the court "shall" allow the claim.  The exceptions enumerated in section 502(b) are exhaustive, as the Supreme Court recognized in *Travelers Casualty & Surety*

*Company of America v. Pacific Gas & Electric Company*, 549 U.S. 443 (2007).  An objector

cannot seek "equitable" disallowance when the statutory grounds for disallowance are not met.

The exception that the Committee invokes in Count XIII—section 502(b)(1)—has

no application here.  Under section 502(b)(1), a claim is subject to disallowance if "such claim is

unenforceable against the debtor and property of the debtor, under any agreement or applicable

law for a reason other than because such claim is contingent or unmatured."

Regardless of any section 502(b)(1) objections to certain components of the

Oaktree Claims contained in Count VIII of the Complaint (which is not the subject of this

Motion), "equitable" disallowance, by its very name, presupposes that this cause of action is

based on equity, not "any agreement" or "applicable law."  Accordingly, section 502(b)(1)

cannot possibly be the basis for the Committee's request to "equitably disallow" the Oaktree

Claims regardless of whether or not such claims are valid and enforceable under state law.

Numerous courts have expressly held that section 502 does not permit equitable

disallowance of claims.  *See LightSquared Inc.*, 504 B.R. at 339 ("a plain reading of section 502

of the Bankruptcy Code does not permit equitable disallowance, as it is not among the

enumerated exceptions to allowance of a claim"); *Picard v. Merkin (In re Bernard L. Madoff Inv.*

*Sec. LLC)*, 515 B.R. 117, 157 (Bankr. S.D.N.Y. 2014) ("The Court agrees with the *LightSquared*

analysis, [and] concludes that it cannot disallow an otherwise valid claim based on general

principles of equity"); *In re TMST, Inc.*, 518 B.R. 329, 356, *vacated in part on other grounds*,

Nos. 09-17787-DK, ADV 11-340, 2014 WL 6390312 (Bankr. D. Md. Nov. 14, 2014) (holding,

in the face of request for equitable disallowance, that "[u]nder Section 502, properly filed claims

. . . are allowed unless objected to and one of the specific bases for disallowance listed in Section

502(b) applies"); *Citrus Tower Blvd. Imaging Ctr., LLC v. Key Equip. Fin., Inc. (In re Citrus*

*Tower Blvd. Imaging Ctr., LLC)*, 520 B.R. 892, 904 (Bankr. N.D. Ga. 2014) ("Debtor's claim for

Equitable Disallowance/Reduction is simply not available in this district" as "[t]he Eleventh

Circuit has held that only subordination of claims, not their disallowance, may be permitted.")

(citation omitted)).   This Court should similarly recognize that section 502 does not permit

equitable disallowance of claims and dismiss the relevant portion of Count XIII.

      **B.**      **Section 105 of the Bankruptcy Code Cannot Independently Confer Authority
to Equitably Disallow Claims**

      The Committee also relies on section 105(a) of the Bankruptcy Code, which states

that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title."   "It is hornbook law," however, that "section 105(a) does

not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy

Code." *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (citation omitted); *see also In re Smart

World Techs.*, 423 F.3d 166, 184 (2d Cir. 2005) (section 105(a) "does not authorize the

bankruptcy courts to create substantive rights that are otherwise unavailable under applicable

law, or constitute a roving commission to do equity") (citation omitted).   While "Section 105(a)

confers authority to 'carry out' the provisions of the [Bankruptcy] Code, . . . it is quite

impossible to do that by taking action that the [Bankruptcy] Code prohibits." *Siegel*, 134 S. Ct.

at 1194.   "[W]hatever equitable powers remain in the bankruptcy courts must and can only be

exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*,

485 U.S. 197, 206 (1988).

      The Supreme Court recently addressed the scope of section 105(a) in *Law v.

Siegel*, 134 S. Ct. 1188 (2014).   At issue in that case was the interplay of section 105(a) with

section 522 of the Bankruptcy Code, which prescribes what property an individual debtor can

exempt from its bankruptcy estate and prohibits the use of exempt property to pay the expenses

of administering the bankruptcy estate.  The bankruptcy court in *Siegel* found that the debtor had

fraudulently misrepresented the amount of loans encumbering his home to discourage its sale,

and allowed the bankruptcy trustee, under section 105(a), to surcharge the debtor's exempt

property to pay for the costs of litigation regarding this misrepresentation.  The intermediate

appellate courts affirmed, but the Supreme Court reversed, holding that the bankruptcy court had

exceeded its authority under section 105(a).  *Id.* at 1195.  The Supreme Court explained that

section 522 "does not give courts discretion to grant or withhold exemptions based on whatever

considerations they deem appropriate," but rather "exhaustively specifies the criteria that will

render property exempt."  *Id.* at 1196.  The Supreme Court concluded that "[t]he [Bankruptcy]

Code's meticulous–not to say mind-numbingly detailed–enumeration of exemptions and

exceptions to those exemptions [in section 522] confirms that courts are not authorized to create

additional exceptions."  *Id.* at 1196.

       The Supreme Court's logic in *Siegel* is directly applicable here.  The structure of

section 502(b) is similar to section 522—the provision at issue in *Siegel*—in that it exhaustively

enumerates the grounds pursuant to which a claim against a bankruptcy estate can be

disallowed.[4]  Under *Siegel*, a bankruptcy court cannot add to the nine exceptions enumerated in

section 502 through its equitable powers codified in section 105(a).  *See TMST*, 518 B.R. at 357

("Like the exceptions to exemptions discussed in *Siegel*, [i]n Section 502(b) the Code provides

specific grounds for disallowance of claims that do not include equitable disallowance . . . [and

thus] the court may not add to [the] listed grounds where the statute makes clear that the list is

exclusive and not merely examples."); *Madoff*, 515 B.R. at 157 ("[T]he all-inclusive structure of

11 U.S.C. § 502(b) implies that whatever is excluded cannot be supplied through § 105(a).").

---

[4]      *See Travelers*, 549 U.S. 443 (recognizing that exceptions enumerated in section 502(b) are exhaustive).

Indeed, since the Supreme Court's decision in *Siegel*, no court has allowed a claim for equitable disallowance to survive dismissal.[5]

## II.  NEITHER PRECEDENT NOR LEGISLATIVE HISTORY CAN OVERRIDE THE BANKRUPTCY CODE'S PLAIN LANGUAGE

Oaktree is aware of only four decisions since the Bankruptcy Code was enacted that have upheld a cause of action for equitable disallowance of claims as legally cognizable, all of which pre-date *Siegel*, none of which is binding on this Court, and none of which is persuasive in its reasoning.  In *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438 (S.D.N.Y. 1994) and *Adelphia Recovery Trust v. Bank of America*, 390 B.R. 64 (S.D.N.Y. 2008), the courts cited to *Pepper v. Litton*, 308 U.S. 295 (1939), a decision applying the Bankruptcy Act, as support for their rulings.  In *In re Washington Mutual, Inc.*, 461 B.R. 200 (Bankr. D. Del. 2011), *vacated in relevant part,* No. 08-12229 (MFW), 2012 Bankr. LEXIS 895, at *52-60 (Bankr. D. Del. Feb. 24, 2012), a decision which was subsequently vacated as a condition to plan confirmation, Judge

---

[5]      Due to internal inconsistency in the Complaint (*cf.* ¶ ¶ 413 and 426), it is not clear whether the Committee also intends to rely on Section 510(c) in support of the equitable disallowance claim.  To the extent the Committee does, however, it will find no stronger footing in such section.  In pertinent part, section 510(c) provides that a bankruptcy court may, "under principles of equitable subordination, *subordinate* for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest. . . ."  11 U.S.C. § 510(c)(1) (emphasis added).  Thus, by its plain terms, section 510(c) addresses only equitable *subordination* of claims; it makes no reference to equitable *disallowance* of claims.  Indeed, equitably disallowing claims would directly conflict with the language of section 510(c), which only permits subordination of "an allowed claim" to "another allowed claim" (or "an allowed interest" to "another allowed interest").  *Id.*  Section 510(c) does not permit subordination of a claim to an equity interest.  But that is, effectively, what the result of equitable disallowance would be.  As the court observed in *LightSquared*, equitable disallowance "would effectively achieve the very result the Bankruptcy Code precludes: the equitable subordination of debt to equity."  504 B.R. at 342.  Thus, numerous courts have held that, under 510(c), "equitable considerations can [only] justify the subordination of claims, not their disallowance."  *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699 (5th Cir. 1977); *see, e.g.*, *Austin v. Chisick (In re First All. Mortg. Co.)*, 298 B.R. 652, 666 (C.D. Cal. 2003), *aff'd*, 471 F.3d 977 (9th Cir. 2006) ("A court may only equitably *subordinate* in reordering the priorities of bankruptcy claims–the doctrine does not permit *disallowance* of claims.") (citation omitted) (emphasis added); *TMST*, 518 B.R. at 356 ("Section 510(c) does not add to the permissible grounds for disallowance . . . [i]t provides that the court may *subordinate* an allowed claim under principles of equitable subordination.  It makes no mention of *disallowance*.") (emphasis added); *Madoff*, 515 B.R. at 157 ("Bankruptcy Code § 510(c) provides for the remedy of equitable *subordination*, not equitable *disallowance*.") (emphasis added); *LightSquared*, 504 B.R. at 336 ("Section 510(c) does not, on its face, provide for the disallowance of any claim or interest based on principals [sic] of equity or otherwise."); *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994) ("The doctrine [of equitable subordination] is limited to reordering priorities, and does not permit *disallowance* of claims.") (citation omitted) (emphasis added).

Walrath followed *Adelphia*. *Id.* at 257. And in *In re Outdoor Sports Headquarters, Inc.*, 168

B.R. 177 (Bankr. S.D. Ohio 1994), the court based its decision on legislative history. *Id.* at 181-

82.

This Court should not follow these decisions for at least three reasons.[6] <u>First</u>,

each decision predates the Supreme Court's decision in *Siegel* and, in light of *Siegel,* does not

survive as precedent.

<u>Second</u>, none of these decisions followed the Bankruptcy Code's plain language,

particularly the statutory command in section 502 that a bankruptcy court "shall" allow a claim

where none of the nine specifically enumerated exceptions apply. *See LightSquared*, 504 B.R. at

339 ("[This is] an instance . . . in which it is not unreasonable to conclude that the statutory

language is express and clear on its face."). Indeed, "while pre-Code practice 'informs our

understanding of the language of the [Bankruptcy] Code,' it cannot overcome that

language." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 10 (2000)

(citation omitted). Where, as here, "the meaning of the Bankruptcy Code's text is itself clear . . .

its operation is unimpeded by contrary . . . prior practice." *Id.* Likewise, the clarity of the

statutory language at issue here makes it inappropriate to delve into legislative history. *See U.S.

v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("[W]here, as here, the statute's language is

plain, 'the sole function of the courts is to enforce it according to its terms.' The language before

---

[6]    Even if equitable disallowance were a legally cognizable cause of action (it is not), comparison to these
decisions demonstrates that the facts alleged in the Committee's Complaint would not state a plausible claim here.
The court in *Pan Am* found that the facts alleged—the defendants' refusal to provide additional funding for the
debtors' reorganization—did ***not*** support equitable disallowance. 175 B.R. at 498. *Washington Mutual* concerned
noteholders' alleged trading on confidential information obtained from settlement negotiations in a chapter 11 case,
in violation of confidentiality agreements, in order to influence the reorganization in their own interest. 461 B.R. at
256-66. *Adelphia* involved allegations that lenders, some of whose affiliates provided investment banking services
to the debtors, assisted the debtors' management with "looting" the debtors' assets. 365 B.R. at 31. Finally,
*Outdoor Sports* involved allegations that the debtor's ***existing*** lenders abused their influence to induce the debtor to
breach agreements with other creditors. *See* 168 B.R. at 179 (lender "had a long standing and close relationship"
with the debtor). This case, in contrast, involves a third party lender that engaged in arm's length negotiations with
the Debtors as part of a competitive bidding process. To uphold the Committee's equitable disallowance claim
based on the facts alleged in this case would go substantially farther than any other court has ever gone.

us expresses Congress' intent . . . with sufficient precision so that reference to legislative history . . . is hardly necessary.") (citations omitted).

   <u>Third</u>, as explained below, neither the Supreme Court's decision in *Pepper* nor the legislative history is helpful to the Committee.

## A. *Pepper v. Litton* **Is Inapposite**

   *Pepper* concerned a "scheme to defraud creditors" where the debtor's controlling stockholder, a "one-man" corporation, caused the debtor to confess judgment in his favor, while the debtor was a defendant in a lawsuit brought by a third party creditor.  308 U.S. at 296-97. The stockholder "had no intention of trying to satisfy his confessed judgment against his corporation unless and until it became necessary to do so; he was using it only as a shield against the [third party] debt." *Id.* (internal quotation marks omitted). When the third party prevailed in its lawsuit, the stockholder executed on his prior judgment, acquired the assets of the debtor, and transferred them to a newly formed company that he owned. *Id.* at 298.  Thereafter, the debtor filed a bankruptcy petition "plainly for the sole purpose of avoiding payment of the [third party] debt." *Id.* (citation omitted).

   After the bankruptcy filing, the stockholder filed a claim against the debtor based on the confessed judgment and the third party creditor objected.  The trial court disallowed the stockholders' claim, finding that the stockholder had "made a deliberate and carefully planned attempt to avoid the payment of just [third party] debt" and that the stockholder's alleged claims "did not represent an honest debt of the bankrupt corporation [and were] mere[] bookkeeping entries for the double purpose of lessening income taxes and of enabling [the stockholder] to appear as a creditor of the corporation in case it became financially involved." *Id.* at 301 (internal quotation marks omitted).

On appeal, the circuit court reversed on *res judicata* grounds because a separate state court action had determined that the stockholders' judgment was not void. *Id.* at 302. The Supreme Court, however, overturned the circuit court's decision, holding that the state court action had not addressed the validity of the stockholders' debt, and that the bankruptcy court had authority to do so. *Id.* at 302-07. The Supreme Court further held that the "rules governing the fiduciary responsibilities of . . . stockholders come into play on allowance of their claims in bankruptcy" and, under applicable law, "where any of their contracts or engagements with the corporation is challenged[,] the burden is on the . . . stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." *Id.* at 306, 307. Applying this standard, the Supreme Court held that the stockholder's claim was properly subject to an "equitable defense arising out of a breach of fiduciary duty" because the stockholder "as the dominant influence over [the debtor,] used his power not to deal fairly with the creditors of that company but to manipulate its affairs" to his own advantage. *Id.* at 311, 312. Said differently, *Pepper* involved a challenge to a claim on the theory that it was ***unenforceable under applicable law*** – a principle which is now embedded as an exception to the allowance of claims in section 502(b)(1).

On its face, *Pepper* has no application to this case. Oaktree was not a fiduciary of the Debtors, and the Complaint does not allege that the Oaktree Claims are subject to an "equitable defense" under state law based on a breach of fiduciary duty. Instead, the Committee argues that the Oaktree Claims should be disallowed on equitable grounds whether or not they are valid under state law. As the court recognized in *LightSquared*, *Pepper* did not hold that equitable disallowance is a viable remedy "with respect to a claim that has a valid basis under applicable law but against which a party brings an equitable attack." 504 B.R. at 337. Thus, "[i]n

circumstances [like these] in which a claim is valid, . . . reliance on *Pepper* to support the remedy of equitable disallowance is simply misplaced." *Id.* at 342.

Moreover, *Pepper* was decided under the Bankruptcy Act, which differs from the Bankruptcy Code in material relevant ways. Unlike section 502 of the Bankruptcy Code, the Bankruptcy Act provision that governed allowance and disallowance of claims did not exhaustively enumerate the grounds on which claims may be disallowed, potentially allowing bankruptcy courts to consider a wider range of considerations than does the Bankruptcy Code.[7] Thus, even if *Pepper* were stretched beyond its facts and considered as authority for equitable disallowance of claims **under the Bankruptcy Act**, it still would not have any application to this case, governed by **the Bankruptcy Code**.

**B.    The Bankruptcy Code's Legislative History Does Not Help the Committee**

Even if it were appropriate to resort to legislative history in light of the plain language of the Bankruptcy Code (and it is not), the applicable legislative history cannot support a cause of action for equitable disallowance either. The decision in *Outdoor Sports* emphasized a congressional report that accompanied a version of the Bankruptcy Reform Act introduced in the U.S. House of Representatives—H.R. 8200. 168 B.R. at 181-182. That bill included a precursor to current section 510(c) that would have authorized a court to "subordinate for purposes of distribution all or any part of another claim or interest."[8] Although that precursor provision did not expressly allow for equitable disallowance of claims, a report from the House Judiciary Committee that accompanied the bill stated that it did not preclude equitable disallowance:

---

[7]    Section 57 of the Bankruptcy Act merely stated that "claims which have been duly proved shall be allowed, upon receipt or upon presentation to the court, unless objection to their allowance shall be made by the parties in interest, or their consideration be continued for cause by the court upon its motion." Act of June 22, 1938, (Chandler Act), ch. 575, 52 Stat. 840.

[8]    *See* H.R. 8200, 95th Cong., 1st Sess. (1977).

> Subsection (b) permits the court to subordinate, on equitable grounds, all or any part of an allowed claim or interest to all or any part of another allowed claim or interest, and permits the court to order that any lien securing claim subordinated under this provision be transferred to the estate. This section is intended to codify case law, such as such as *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), and *Taylor v. Standard Gas and Electric Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1938), and is not intended to limit the court's power in any way. . . . Nor does this subsection preclude a bankruptcy court from completely disallowing a claim in appropriate circumstances. *See Pepper v. Litton, supra.* The court's power is broader than the general doctrine of equitable subordination, and encompasses subordination on any equitable grounds.

H.R. Rep. No. 595 (1977).

In contrast to the House bill, a parallel bill introduced in the U.S. Senate included a precursor to current section 510(c) that would have affirmatively allowed equitable disallowance of claims.  It stated, in pertinent part, that "[a]fter notice and a hearing the court may– . . . disallow, in part or in whole, any claim or interest in accordance with the equities of the case."  S. 2266, 95th Cong., 2d Sess. (1977).  The House and Senate bills were then the subject of "eleventh-hour hearings" which included "negotiations of the final versions of the bill."  *In re Virtual Network Servs. Corp.*, 902 F.2d 1246, 1248 (7th Cir. 1990).  Those hearings "resulted in a document representing compromises which were previously unevaluated by congressional committee," including the House Judiciary Committee.  *Id.*

Conspicuously, the end product—the current Bankruptcy Code—omitted the language in the Senate bill that would have authorized equitable disallowance of claims.  Further, the final version of section 510(c) also varied from the language of the House bill by more clearly stating that a claim can only be equitably subordinated to "another claim" and not to an equity interest.  "The [House and Senate] committees in charge of evaluating § 510 did not

prepare a final report on the section" to explain these changes. *Virtual Network Servs.*, 902 F.2d at 1248.

As even the *Adelphia* court recognized, this legislative history provides no clear support for equitable disallowance of claims. *See Adelphia*, 390 B.R. at 75 (court "cannot find in the legislative history cited by plaintiff a basis to attribute to Congress an intent that the [Bankruptcy] Code should authorize equitable disallowance as well as equitable subordination"); *see also LightSquared*, 504 B.R. at 343 (finding that legislative history "raises more questions than answers" with respect to equitable disallowance). Indeed, to the extent the Committee relies on section 510(c),[9] the House Judiciary Committee report does not support such reliance. By stating that the precursor provision in the House bill did not "preclude" equitable disallowance of claims, the report clearly acknowledges that section 510(c) does not itself authorize such disallowance. Neither can the Committee rely on the inclusion in the Senate bill of a provision authorizing equitable disallowance because that provision was stricken from the final version of the statute.

At most, the legislative history is ambiguous. And "[r]esort to legislative materials is not permissible where they are contradictory or ambiguous." *See Holtzman v. Schlesinger*, 484 F.2d 1307, 1314 (2d Cir. 1973) (citation omitted); *accord* 2A Sutherland Statutory Construction § 48:2 n.9 (7th ed.) ("When Congress provides little material with which to determine the proper legislative history, speculation is improper.") (citing *W. Air Lines, Inc. v. Bd. of Equalization of State of S.D.*, 480 U.S. 123, 130 (1987) (addressing a "provision [which] was added to the Act at conference, and there is no legislative history specifically discussing it").

---

[9]     Indeed, as stated in footnote 5 above, it is not clear whether the Committee relies on section 510(c) for its equitable disallowance, as opposed to its equitable subordination, claim. *See* Complaint ¶ 413 ("Pursuant to section 510(c) of the Bankruptcy Code, the Bankruptcy Court may, "'(1) under principles of equitable subordination, **subordinate** for purposes of distribution all or part of an allowed claim to all or part of another allowed claim . . .'") (emphasis added).

## **CONCLUSION**

Because equitable disallowance is not a legally cognizable cause of action, the

Court should enter judgment on the pleadings in favor of Oaktree and against the Committee

with respect to Count XIII of the Complaint insofar as it seeks equitable disallowance of the

Oaktree Claims, and grant such other relief as the Court deems just.


Dated: February 5, 2016  
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Andrew R. Remming*  
Robert J. Dehney (No. 3578)  
Gregory W. Werkheiser (No. 3553)  
Andrew R. Remming (No. 5120)  
1201 North Market Street, 16th Floor  
P.O. Box 1347  
Wilmington, Delaware 19899  
Telephone:  (302) 658-9200  
Facsimile:  (302) 658-3989  
rdehney@mnat.com  
gwerkheiser@mnat.com  
aremming@mnat.com

-and-

MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne  
Samuel A. Khalil  
Lauren C. Doyle  
28 Liberty Street  
New York, NY 10005  
Telephone:  (212) 530-5000  
Facsimile:  (212) 530-5219  
ddunne@milbank.com  
skhalil@milbank.com  
ldoyle@milbank.com

-and-

Andrew M. Leblanc
Aaron L. Renenger
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone:  (202) 835-7500
Facsimile:  (202) 263-7586
aleblanc@milbank.com
arenenger@milbank.com

*Counsel for Oaktree*